# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JASON M. JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:17-cv-01241-JHE |
| CITY OF ARGO, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Jason M. Jackson ("Jackson" or "Plaintiff") initiated this action on July 25, 2017, against Defendants the City of Argo, Alabama ("the City" or "Argo") and Officer Glenn Wells, ("Captain Wells," and together with the City, the "Defendants"). (Doc. 1). On August 18, 2017, Defendants moved to dismiss the complaint, (doc. 5), and to strike portions of it, (doc. 6). On August 31, 2017, Jackson amended his complaint, (doc. 12), and the undersigned found both of Defendants' motions moot in light of the amended complaint, (doc. 17). As with the original complaint, Defendants moved to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[2] (docs. 13 & 13-1), and to strike portions of it, (doc. 14). These

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

[2] Defendants' motion to dismiss presents a forty-four-paragraph laundry list of defenses, including service of process, the statute of limitations, laches, unclean hands, and subject-matter jurisdiction, none of which they support with argument. (*See generally* doc. 13). Their attached brief argues for dismissal only under Rule 12(b)(6). (*See* doc. 13-1 at 15-17). The undersigned declines to consider Defendants' numerous conclusory arguments for dismissal to the extent they are not developed in the brief. *See Flanigan's Enterprises, Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001).

motions are fully briefed and ripe for review. (Docs. 13, 14, 19 & 22). For the reasons stated more fully below, the motion to dismiss is **GRANTED**, and the motion to strike is **DENIED AS MOOT**.

## I. Standard of Review

Rule 12(b)(6), FED. R. CIV. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

## II. Background[3]

The City of Argo is an Alabama municipality located partially in Jefferson County and partially in St. Clair County. (Doc. 12 at ¶ 2). It has fewer than 19,000 inhabitants. (*Id.* at ¶ 30).

On the morning of August 8, 2015 — a clear, dry, sunny day — Jackson was travelling northbound on Interstate 59. (*Id.* at ¶¶ 29 & 31). Captain Wells, an Argo police officer and the city's only officer on duty that day, was running radar on Interstate 59. (*Id.* at ¶¶ 3 & 29). Wells believed Jackson was travelling at twenty-six miles per hour in excess of the speed limit. (*Id.* at ¶ 31). Based on that belief, Captain Wells pursued Jackson in his patrol car and, using his emergency equipment, stopped Jackson. (*Id.*). Captain Wells issued Jackson a citation for reckless driving. (*Id.*).

Jackson hired counsel to defend against the reckless driving charge, and, after the City refused to dismiss the charge, the matter proceeded to trial in Argo Municipal Court on November 6, 2015. (*Id.* at ¶¶ 36-37). Captain Wells testified that he has worked at the Argo Police department since 2006 and runs radar on I-59 "pretty much every Saturday and Sunday" from 7:00 a.m. to 7:00 p.m. (*Id.* at ¶ 37). Captain Wells also testified that his only probable cause in pulling Jackson over was his speed. (*Id.*). Captain Wells further testified that he is aware of Alabama Code § 32-5A-171(8), which prohibits a municipality or town with fewer than 19,000 inhabitants from enforcing the general prohibition on driving in excess of the maximum speed limit on an interstate highway. (*Id.* at ¶¶ 17 & 37).

---

[3] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, these "facts" are taken directly from the amended complaint.

Following Captain Wells's testimony, Jackson moved for an acquittal on the reckless driving charge, arguing reckless driving requires the presence of another factor in addition to speeding, but the municipal court denied the motion. (*Id.* at ¶¶ 21 & 39). Jackson was found guilty of reckless driving and was assessed a fine and court costs totaling $362.00. (*Id.* at ¶¶ 39-40). Jackson then appealed to the Circuit Court of St. Clair County, posting a $250.00 appeal bond with the City. (*Id.* at ¶¶ 40-41). A year after receiving the citation, Jackson was acquitted of the reckless driving charge; however, the City did not refund Jackson's appeal bond. (*Id.* at ¶¶ 42-43).

### III. Analysis

Jackson's amended complaint asserts the following claims: (1) a 42 U.S.C. § 1983 count against the City for illegal seizure in violation of the Fourth Amendment, (doc. 12 at ¶¶ 45-62); (2) a § 1983 count against Captain Wells in his individual capacity, also for illegal seizure, (*id.* at ¶¶ 63-68); (3) a § 1983 count against the City for excessive fines in violation of the Eighth Amendment, (*id.* at ¶¶ 69-74); (4) a § 1983 count against the City for negligent training, (*id.* at ¶¶ 75-79); (5) a § 1983 count for inadequate policies against the City, (*id.* at ¶¶ 80-87); (6) a § 1983 count against the City, asserted in the alternative to his fourth count, for customs and policies encouraging Argo officers to violate motorists' constitutional rights, (*id.* at ¶¶ 88-99); (7) a § 1983 count against the City for malicious prosecution, (*id.* at ¶¶ 100-12); (8) a state law unjust enrichment claim against the City, (*id.* at ¶¶ 113-17); (9) a state law conversion claim against the City, (*id.* at ¶¶ 118-21); and (10) a state law fraudulent inducement claim against the City, (*id.* at ¶¶ 122-24). Jackson also includes a number of class action allegations. (*Id.* at ¶¶ 9-14).

#### A. Section 1983 Claims

Defendants argue Jackson's illegal seizure claims fail against both the City and Captain Wells because Captain Wells had probable cause to stop Jackson. (Doc. 13-1 at 19-21).

4

Consequently, they contend Captain Wells is shielded by qualified immunity. (*Id.* at 27-31). Defendants also argue Jackson's claims against the City are fatally flawed by Jackson's failure to plead specific facts that would support municipal liability under § 1983 and because actions Jackson attributes to the City were actually undertaken by the city's municipal court. (*Id.* at 22-26).

### 1. Count II – Captain Wells

"Qualified immunity protects government officials who were sued individually 'unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (citation omitted). To receive the protection of qualified immunity, the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). Once an official establishes he is acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate qualified immunity is inappropriate. *White v. City of Birmingham*, 96 F. Supp. 3d 1260, 1285 (N.D. Ala. 2015). To determine whether qualified immunity is appropriate, the court asks two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (2) "If a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). This two-part analysis may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Jackson alleges his Fourth Amendment rights were violated by the stop. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). A law enforcement officer may stop a vehicle consistent with the Fourth Amendment "when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). Thus, "the existence of probable cause at the time of [a seizure] is an absolute bar to a subsequent constitutional challenge to the [seizure] . . . Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted).

A police officer need not have actual probable cause to be shielded by qualified immunity, as the Eleventh Circuit has recently explained:

> Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only "arguable" probable cause to arrest the plaintiff. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) . . . "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Id.* (emphasis added and internal quotation marks omitted). *See also Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("[T]he inquiry is . . . whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." (internal quotation marks omitted)).
>
> Whether an officer has probable cause or arguable probable cause, or neither, "depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because

it appears, in hindsight, that he might have made a mistake. The concept of arguable probable cause therefore allows for the possibility that an officer might "reasonably but mistakenly conclude that probable cause is present." *Id.*

*Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).

Jackson's theory breaks down as follows: because Argo has fewer than 19,000 inhabitants, (*see* doc. 12 at ¶ 30), an Argo police officer is statutorily forbidden from issuing a speeding citation on an interstate highway. *See* ALA. CODE § 32-5A-171(8) ("A law enforcement officer or a peace officer of any incorporated municipality or town which has less than 19,000 inhabitants according to the most recent federal decennial census shall not enforce this section on any interstate highway."). The City's police officers get around this by issuing reckless driving citations instead of speeding citations, even in the absence of probable cause for reckless driving. Jackson contends Captain Wells subjected him to an illegal seizure because Captain Wells (1) lacked the authority to pull Jackson over for speeding because of the statutory provision in § 32-5A-171(8);[4] and (2) could not have had probable cause to pull Jackson over for reckless driving (the offense Jackson was cited for) because Jackson did nothing other than speed.[5] The logical consequence of this theory is that it rises and falls with whether, as a matter of law, an officer could have probable

---

[4] Defendants do not argue Captain Wells had the authority to cite Jackson for speeding, although in their reply they attempt to distinguish "enforcement" of the speeding statute from "performing an investigatory stop pursuant to" the speeding statute. (Doc. 22 at 12-13). This is a distinction without an appreciable difference; it is unclear what the object of a traffic stop "pursuant to" the speeding statute would be if not to enforce it. Since Captain Wells lacked the jurisdiction to enforce the speeding statute, he lacked probable cause to perform an investigatory stop predicated on a violation of the statute. *See United States v. Woods*, 2006 WL 2338167, (M.D. Ala. Aug. 10, 2006).

[5] In a footnote to his complaint, Jackson denies he was actually going as fast as Captain Wells claims, (doc. 12 at 9 n.5), but not that he was speeding. In any event, Jackson's theory assumes Captain Wells had no right to stop him even if he was going 96 miles per hour, (*see id.* at ¶¶ 52-57).

cause to stop a motorist for reckless driving based only on the motorist's speed. If Captain Wells could have legally made such a stop, he is entitled to qualified immunity.

Although Jackson contends that reckless driving under Alabama law is "often informally referred to as 'speeding plus' in law enforcement because the statute clearly states both speed and another factor are required for a driver to be guilty of" the offense, (doc. 12 at ¶ 21) (emphasis in original), his argument that speed alone cannot provide probable cause to stop a driver for reckless driving is not directly supported by the text of the reckless driving statute. Alabama's reckless driving statute provides: "Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving." ALA. CODE § 32-5A-190. In other words, a person can violate the statute in one of two ways. First, a person may commit the offense by running afoul of the first clause, which forbids "driv[ing] any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property." Second, a person may drive a vehicle "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property," violating the statute's second clause. Only the second clause arguably requires speed and another element. A motorist could violate the first clause by speeding alone, so long as the motorist's speed satisfies the requirements that it be "careless[] and heedless[]" and "in willful or wanton disregard for the rights or safety of persons

or property."[6] The text of the statute does not foreclose that an objectively reasonable police officer could believe that a person's excessive speed could satisfy the first clause.

Jackson relies primarily on *Zann v. State*, 17 So. 3d 1222 (Ala. Crim. App. 2009), for the proposition that more than speeding is required for reckless driving. (*See* doc. 12 at ¶ 22; doc. 19 at 5).[7] In *Zann*, the evidence at trial showed that an officer clocked the defendant driving at 75 or 76 miles per hour in a 70 mile per hour zone. 17 So. 3d at 1223. The officer then observed the vehicle's passenger side tires cross over the shoulder for approximately one second. *Id*. Based on that, the officer turned on his blue lights, pulled the defendant over, and issued him a reckless driving ticket. *Id*. The Alabama Court of Criminal Appeals reversed the defendant's conviction

---

[6] Although it is not dispositive of Alabama law, the undersigned notes that jurisdictions with similar reckless driving statutes have adopted varying positions on whether speed alone can support a reckless driving charge. Some adopt the reading Jackson advocates. *See, e.g., State v. Howard*, 253 Neb. 523, 527, 571 N.W.2d 308, 313 (1997) ("We have determined that . . . speed alone does not support a conviction for 'willful reckless driving,' which is defined in Neb. Rev. Stat. § 60–6,214 (Reissue 1993) as driving 'in such a manner as to indicate a willful disregard for the safety of persons or property' . . . ."). Others take the opposite position. *See, e.g., Bonnell v. Peake*, No. 07-1139, 2008 WL 4140571, at *4 (Vet. App. Aug. 29, 2008) (citing *People v. Nowell*, 114 P.2d 91, 84 (Cal. App. Dep't Super. Ct. 1941) ("California law recognize[s] that '[t]here may be a point at which the speed becomes so excessive, the danger of injury . . . so probable, that such extreme speed alone might be held to be willful misconduct . . . ."). And still others have equivocated. *See, e.g., State v. Lebron*, 954 So. 2d 52, 55 (Fla. Dist. Ct. App. 2007) (citations omitted) ("A number of appellate courts in Florida have held that speed alone is insufficient as a basis for reckless driving . . . . The origin of this maxim seems to have been obscured by time. This court, however, has never directly said that speed alone is not enough.").

[7] Jackson's amended complaint contains citations to other cases in which a defendant's conviction for reckless driving was affirmed, seeking to show that "[e]very case has one thing in common — where speed was a factor, the defendant had also committed another violation." (Doc. 12 at ¶ 22). The fact that these specific reckless driving scenarios included speed and another element does not exclude the possibility that speed alone could constitute reckless driving. Instead, it shows that Alabama's appellate courts often encounter reckless driving offenses that involve more than just speed. *Accord State v. Lebron*, 954 So. 2d 52, 55 (Fla. Dist. Ct. App. 2007) ("When confronted with the issue, we, as most other appellate courts of this state, have found that speed was not alone in what amounted to reckless driving.").

for reckless driving, finding "nothing in [the defendant's] conduct, i.e., allowing the passenger-side tires of his vehicle to cross over the shoulder for one second at a speed of only five or six miles an hour over the posted speed limit, rises to the level of willful or wanton disregard for the rights or safety of others." *Id.* at 1224. It also found "there is no evidence indicating that [the defendant] was driving without due caution and circumspection and at a speed or in a manner likely to endanger anyone." *Id.* It further found that "there was no testimony regarding the position or presence of any other vehicles on the interstate and no testimony to the effect that [the defendant] was driving 'carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property' or that he was driving 'without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property.'" *Id.* Consequently, it held as a matter of law that the defendant's conduct did not rise to the level of reckless driving. *Id. Zann* does not support Jackson's argument. Notably absent from the court's analysis in this case is a statement — or even an implication — that more than speed is <u>required</u> for probable cause to stop a driver for (or even a convict a defendant of) reckless driving under either clause of the statute.[8]

---

[8] This case is also factually distinguishable from *Zann* because there <u>was</u> testimony at Jackson's municipal court trial from Captain Wells that Jackson was driving without due caution, (*see* doc. 13-2 at 3 (6:5-7), and at a speed likely to endanger a person, (*see id.* (6:8-11)). Although the court is ordinarily required to convert a 12(b)(6) motion to a motion for summary judgment when matters outside the pleadings — such as the trial transcript attached to Defendants' motion — are considered and not excluded, *see* FED. R. CIV. P. 12(e), the court is not required to do so "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim . . . ." *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). That is true here, since Jackson references the trial and Captain Wells's testimony in several paragraphs of his amended complaint, (*see* doc. 12 at ¶ 37-40), and the content and outcome of the trial are central to several of Jackson's claims.

The remainder of Jackson's argument Captain Wells violated his constitutional rights by stopping him for reckless driving based only on his speed fares no better. Paragraphs 26 and 27 of the amended complaint reference an advisory opinion by former Alabama Attorney General William Pryor distinguishing § 32-5A-170, which prohibits drivers from driving "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing," from § 32-5A-171, the prohibition on exceeding the speed limit.

> Some fact situations give rise to a violation of both sections 32-5A-170 and -171 — for example, driving over the posted limit within the corporate limits or police jurisdiction on snow pack on a narrow and winding road at night. In such case, the officer should charge a violation of section 32-5A-170 only. Driving just under the posted speed limit in the conditions stated could also be the basis of a violation of section 32-5A-170. On the other hand, driving over the posted limit on a clear day and on a dry, divided highway in light traffic could only be charged under section 32- 5A-171 and, thus, is not enforceable by municipal police officers under section 32-5A-171. When a driver is cited in the police jurisdiction of the city for violating section 32-5A-170, the citing officer should specify the hazardous conditions present in the "Facts Relating To The Offense" box on the Uniform Traffic Ticket and Complaint ("UTTC") to distinguish such charge from the provisions specified in section 32-5A-171.

AGO 2004-061 at 6. The problem with relying on this advisory opinion is that, as Jackson concedes, (*see* doc. 12 at 8 n.3 & n.4), it does not relate to the reckless driving statute at all, so its statements about what must and must not be enforced as speeding are not directly applicable. Jackson argues the opinion applies by analogy to reckless driving because both statutes require a second element. (*Id.*). But, as stated above, at least one provision of the reckless driving statute does not <u>necessarily</u> require an element beyond speeding. Further, to the extent that Captain Wells did not comply with the spirit of the advisory opinion by failing to indicate more than simply speed on the ticket (i.e., failing to specifically indicate that Jackson's speed met the elements of the reckless driving statute), (*see* doc. 12 at ¶ 33), this lack of compliance with state law is not an actionable constitutional claim. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985).

Separately, but dovetailing with the above discussion, Jackson's claim against Captain Wells is due to be dismissed because he has not shown that it is clearly established that a police officer lacks probable cause to stop a motorist for reckless driving based solely on the motorist's speed.[9] As noted above, Jackson relies solely on *Zann* for his argument. Even if *Zann* stood for the proposition that Jackson contends, it would not be clearly established law such that Jackson can defeat qualified immunity by relying on it because it is a decision of the Alabama Court of Criminal Appeals. "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003). Jackson has cited no controlling decision that would clearly establish this right. Consequently, Captain Wells is entitled to qualified immunity regardless of whether Jackson could demonstrate a constitutional violation.

**2. Counts I, III, IV, V, VI, and VII – City of Argo**

Four of the counts against the City are directly related to the stop and assert the City is liable for it via municipal liability. As with Jackson's claim against Captain Wells, these counts assume a stop based on reckless driving is unlawful if it is based on speed alone. Count I is an illegal seizure (i.e., Fourth Amendment) count against the City, attempting to hold it liable for the traffic stop itself. (Doc. 12 at ¶¶ 45-62). Count IV alleges the City "negligently failed to train Captain Wells regarding state and federal law, particularly with regard to a) the lack of authority to enforce § 32-5A-171 on Alabama interstate highways via using other statutes, b) the lack of

---

[9] The Supreme Court has recently reiterated that "the clearly established right [the plaintiff argues was violated] must be defined with specificity," and the Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, --- S. Ct. ----, 2019 WL 113027, at *2 (Jan. 7, 2019) (citation omitted).

authority to cite drivers for reckless driving when the only perceived traffic violation is speed; and 3) illegal seizures under the Fourth Amendment to the United States Constitution." (*Id.* at ¶ 76). Count V alleges the City failed "to create, adopt and implement rules, regulations, practices and procedures which clearly instruct police officers as to the limits of their traffic enforcement [sic] under Alabama law and the Fourth Amendment pertaining to illegally stopping motorists traveling through the City of Argo on Interstate 59," leading to the stop. (*Id.* at ¶¶ 81-86). Count VI, asserted in the alternative to Count IV, alleges the City's customs and practices created an unwritten policy encouraging its officers to illegally stop motorists, resulting in the violation of Jackson's Fourth Amendment rights. (*Id.* at ¶¶ 89-99).

A municipality can only be liable under § 1983 for the unconstitutional actions of its employees when its "official policy" causes a constitutional violation. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). To support municipal (or *Monell*) liability under § 1983, Jackson must show "(1) a violation of his constitutional rights; (2) that the City had a custom or policy that was deliberately indifferent to that constitutional right; and (3) a causal link between the City's policy or custom and the violation." *Sharp v. City of Huntsville, AL.*, 730 F. App'x 858, 860 (11th Cir. 2018) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Jackson's inability to show the stop violated the Fourth Amendment forecloses his ability to show the first element, and thus is fatal to each of these claims against the City regardless of whether Jackson can show the other elements.[10] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)

---

[10] Independently fatal to Count I is that it attempts to hold the City liable for Captain Wells's conduct in initiating the stop. However, a municipality "may not be held liable for

13

("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm . . . If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized [unconstitutional conduct] is quite beside the point.").

In Count VII, Jackson asserts a malicious prosecution claim against the City. (*Id.* at ¶¶ 101-112). To establish a § 1983 malicious prosecution claim, "the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). The Eleventh Circuit has looked to both state and federal law for the elements of the common law tort. *Id.* Under Alabama law, those elements are (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. *Id.* at 881-82 (citing *Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir.1998) and *Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831-32 (Ala.1999)). As discussed above, Jackson cannot show the City[11] lacked probable cause to prosecute him for reckless driving based solely on his speed, and this claim is due to be dismissed as well.

---

constitutional deprivations on the theory of *respondeat superior*." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015).

[11] Defendants argue this claim is also due to be dismissed because the prosecution was carried out by the Argo Municipal Court, which is independent of the City. (Doc. 13-1 at 6-12, 26-27). Defendants do not explain why the prosecution of a reckless driving offense, carried out by a prosecutor representing the City of Argo, (*see* doc. 13-2 at 2), and pursuant to a ticket issued by a City police officer, ought to be considered a judicial function attributable to the Argo Municipal Court.

Jackson also contends in Count III that the $362.00 in court costs and fines imposed for the reckless driving ticket was excessive under the Eighth Amendment because the ticket was issued pursuant to an unconstitutional stop. (Doc. 12 at 16-18). The Eighth Amendment's "Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Alexander v. United States*, 509 U.S. 544, 558 (1993). A fine is excessive when it is "grossly disproportional to the gravity of the defendant's offense," which "is determined by examining three factors: (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) (internal citations omitted). Jackson cannot show that the stop was unconstitutional, so he also cannot show that the fine was excessive solely because of an unconstitutional stop. And, considering the factors above, the undersigned finds a $362.00 fine for a reckless driving conviction (which, as Jackson notes, is punishable by a fine of between $25.00 and $500.00, (*see* doc. 12 at ¶ 25)), is not grossly disproportionate to the offense such that it is unconstitutionally excessive.

**B. State Law Claims**

In his response to Defendants' motion to dismiss, Jackson "concedes he cannot maintain claims against the City for the intentional torts of conversion and fraudulent inducement." (Doc. 19 at 13). Therefore, those claims, contained in Counts IX and X, (doc. 12 at ¶¶ 118-124), are abandoned and due to be dismissed.[12]

---

[12] Defendants argue the City is entitled to immunity from Jackson's state law claims because Captain Wells would be entitled to immunity under state law. (Doc. 13-1 at 27-40).

As to Jackson's unjust enrichment claim, Defendants contend Jackson's allegations are based on actions taken by the Argo Municipal Court and, in any event, the City is entitled to local-government immunity. (Doc. 13-1 at 34-35). In response, Jackson states his unjust enrichment count is not a tort claim but an equitable remedy, and is properly a part of his § 1983 *Monell* claims against the City. (Doc. 19 at 13-14). To the extent Jackson intends his unjust enrichment count to be part of his § 1983 claims, it is due to be dismissed for the same reasons that those claims are due to be dismissed, as discussed above. To the extent it is intended to be an unjust enrichment claim under state law, Jackson has abandoned it by failing to respond to Defendants' arguments under state law, and it is also due to be dismissed.

**C. Class Claims**

Jackson's complaint attempts to bring claims for declaratory and injunctive relief on behalf of a class comprised of "all persons within the applicable statute of limitations preceding the filing of this action to the date of Class certification who, while traveling on Interstate 59, received a citation for reckless driving by a City of Argo officer/employee where the charge of reckless driving on the face of the citation would not make a prima facie case of reckless driving under Alabama law and were therefore assessed with fines, bonds, or costs." (Doc. 12 at ¶ 9). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403

---

Although Jackson argues Captain Wells is not entitled to immunity under state law, (doc. 19 at 14-15), it is unclear what relevance this argument has given Jackson's state law claims are asserted only against the City and have been affirmatively abandoned.

(1977). To the extent class claims could be appropriate in this case,[13] because Jackson asserts no viable claims, he cannot bring claims on behalf of the putative class.

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss, (doc. 13), is **GRANTED**, and Defendants' motion to strike, (doc. 14), is **DENIED AS MOOT**. A separate order will be entered.

DONE this 22nd day of January, 2019.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[13] As Defendants note in their motion to strike the amended complaint, the effect of Jackson's class action would be to collaterally attack multiple final judgments. (Doc. 14 at ¶¶ 18-19). Jackson concedes this point, but argues "[i]t is extremely well-settled law that final judgments are subject to collateral attack on constitutional grounds" such as the ones he alleges. (Doc. 19 at 11). In support, he cites *Stone v. Powell*, 428 U.S. 465, 477-479 (1976). Defendants correctly identify *Stone* as a habeas decision. (Doc. 22 at 5). It is unlikely in the extreme that members of the class could satisfy many of the requirements for a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (*e.g.*, exhaustion of state remedies, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999), or the requirement that a habeas petitioner be "in custody," *see Duvallion v. Florida*, 691 F.2d 483, 484-85 (11th Cir. 1982)), and it would be inappropriate to combine this § 1983 action with a habeas action. Further, to the extent Jackson seeks to recover monetary damages through the class action, (*see* doc. 12 at ¶ 14), a claim for damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . . [that has not] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254 . . . is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).